# EXHIBIT A



**Your Missouri Courts** .net

Search for Cases by: Select Search Method...

Judicial Links | eFiling | Help | Contact Us | Print    GrantedPublicAccess  Logoff RANDYCOWHERD

21AO-CC00037 - SPENCER KNAPP ET AL V FAG BEARING CORP ET AL (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

**Click here to eFile on Case**
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending ○ Ascending

Display Options: All Entries

---

**04/01/2021** ☐ **Motion to Dismiss**

Defendants Burns McDonnell Engineering Company Inc. and Burns McDonnell Waste Consultants, Inc. Motion to Dismiss Counts III-V with Prejudice; Electronic Filing Certificate of Service.
    **Filed By:** STEPHEN ROBERT MILLER
    **On Behalf Of:** BURNS & MCDONNELL ENGINEERING COMPANY INC, BURNS & MCDONNELL WASTE CONSULTANTS INC

**03/11/2021** ☐ **Corporation Served**

Document ID - 21-SMCC-81; Served To - BURNS & MCDONNELL WASTE CONSULTANTS INC; Server - SO GREENE COUNTY-SPRINGFIELD; Served Date - 02-MAR-21; Served Time - 15:30:00; Service Type - Sheriff Department; Reason Description - Served

☐ **Corporation Served**

Document ID - 21-SMCC-80; Served To - BURNS & MCDONNELL ENGINEERING COMPANY INC; Server - SO GREENE COUNTY-SPRINGFIELD; Served Date - 02-MAR-21; Served Time - 15:30:00; Service Type - Sheriff Department; Reason Description - Served

☐ **Notice of Service**

Summons Return - Burns McDonnell Engineering Company Inc.
    **Filed By:** GRANT STEFFEN RAHMEYER
    **On Behalf Of:** SPENCER KNAPP, ELIZABETH YGARTUA

☐ **Notice of Service**

Summons Return - Burns McDonnell Waste Consultants Inc.
    **Filed By:** GRANT STEFFEN RAHMEYER

**02/10/2021** ☐ **Summons Issued-Circuit**

Document ID: 21-SMCC-81, for BURNS & MCDONNELL WASTE CONSULTANTS INC. Summons issued to the Law Office of Strong-Garner-Bauer PC for service upon defendant. dja

☐ **Summons Issued-Circuit**

Document ID: 21-SMCC-80, for BURNS & MCDONNELL ENGINEERING COMPANY INC. Summons issued to the Law Office of Strong-Garner-Bauer PC for service upon defendant. dja

**02/05/2021** ☐ **Filing Info Sheet eFiling**
    **Filed By:** GRANT STEFFEN RAHMEYER

☐ **Note to Clerk eFiling**
    **Filed By:** GRANT STEFFEN RAHMEYER

☐ **Pet Filed in Circuit Ct**

Petition for Damages.
    **Filed By:** GRANT STEFFEN RAHMEYER

Electronically Filed - Jasper County - Joplin - February 05, 2021 - 03:48 PM

## IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI

| | |
|---|---|
| **SPENCER KNAPP and** ) <br> **ELIZABETH YGARTUA, husband and wife,** ) <br> ) <br>     **Plaintiffs,** ) <br> ) <br>     **v.** ) <br> ) <br> **FAG BEARING CORPORATION,** ) <br> **SERVE:** ) <br>     **CT CORPORATION SYSTEM** ) <br>     **120 SOUTH CENTRAL AVE.** ) <br>     **CLAYTON, MO 63105,** ) <br> ) <br> **and** ) <br> ) <br> **FAG BEARING, LLC.,** ) <br> **SERVE:** ) <br>     **CT CORPORATION SYSTEM** ) <br>     **120 SOUTH CENTRAL AVE.** ) <br>     **CLAYTON, MO 63105,** ) <br> ) <br> **and** ) <br> ) <br> **SCHAEFFLER GROUP USA INC.** ) <br> **d/b/a FAG Bearings LLC, FAG Bearings** ) <br> **Corporation, FAG Bearing Corporation,** ) <br> **FAG Holding Corporation, and/or** ) <br> **Norma FAG Bearings Corporation,** ) <br> **SERVE:** ) <br>     **CT CORPORATION SYSTEM** ) <br>     **120 SOUTH CENTRAL AVE.** ) <br>     **CLAYTON, MO 63105,** ) <br> ) <br> **and** ) <br> ) <br> **BURNS & MCDONNELL ENGINEERING** ) <br> **COMPANY, INC.,** ) <br> **SERVE:** ) <br>     **INCORP SERVICE, INC.** ) <br>     **2847 S. INGRAM MILL ROAD,** ) <br>     **STE. A100** ) <br>     **SPRINGFIELD, MO 65804,** ) <br> ) <br> **and** ) | Case No. _____ |

1

**BURNS & MCDONNELL WASTE** )
**CONSULTANTS, INC.,** )
**SERVE:** )
    **INCORP SERVICE, INC.** )
    **2847 S. INGRAM MILL ROAD** )
    **STE. A100** )
    **SPRINGFIELD, MO 65804,** )
     )
    **Defendants.** )

## PETITION FOR DAMAGES

COME NOW Plaintiffs, through counsel, by and through their attorneys, for their cause of action herein, state and allege as follows:

## PARTIES

1.    Plaintiffs Spencer Knapp ("Spencer") and Elizabeth Ygartua ("Elizabeth"), husband and wife, are individuals over the age of 18 that are currently residing in the State of Texas.

2.    Defendant FAG Bearing Corporation was a Delaware Corporation with a principal place of business in Jasper County, Missouri. Upon information and belief, FAG Bearing Corporation converted into FAG Bearing LLC, which is a wholly owned subsidiary of Schaeffler Group USA, Inc. Defendant FAG Bearing Corporation can be served through its registered agent at CT Corporation System, 120 South Central Avenue, Clayton, MO 63105.

3.    Defendant FAG Bearing LLC is a Delaware company with a principal place of business in Jasper County, Missouri. Upon information and belief, FAG Bearing LLC a wholly owned subsidiary of Schaeffler Group USA, Inc. Defendant FAG Bearing LLC can be served through its registered agent at CT Corporation System, 120 South Central Avenue, Clayton, MO 63105.

2

4. Defendant Schaeffler Group USA Inc. ("Schaeffler") is a Delaware Corporation with its principal place of business in Ft. Mill, South Carolina. Schaeffler can be served through its registered agent at CT Corporation System, 120 South Central Avenue, Clayton, MO 63105.

5. Upon information and belief, Schaeffler owns the brand FAG and conducts business under the name FAG Bearings in Joplin, Newton County, Missouri, and took on, purchased or otherwise assumed all assets, properties, and liabilities of FAG Bearings LLC, FAG Bearings Corporation, FAG Bearing Corporation, FAG Holding Corporation, and/or Norma FAG Bearings Corporation.

6. Indeed, Schaeffler has stated in court filings, "FAG Bearings Corporation converted to FAG Bearings LLC in January 2005, a wholly owned subsidiary of Schaeffler, and sold all of its assets except for some land and buildings in Joplin, Missouri to Schaeffler Group USA Inc." Currently, 'FAG Bearings' is an assumed name or 'd/b/a' under which Schaeffler sometimes conducts business. It has no distinct corporate existence."

7. FAG Bearings LLC is the same entity as FAG Bearings Corporation (collectively referred to as "FAG Bearings").

8. Schaeffler is liable for any liabilities that FAG Bearings may have in this case.

9. Upon information and belief, FAG Bearings is an alter ego and mere instrumentality of Schaeffler, in that Schaeffler has complete control over the finances and policy and business practices of FAG Bearings and as a result veil piercing is appropriate in this action.

10. Upon information and belief, Schaeffler owns all the stock of FAG Bearings, in that these entities share common directors and/or officers, Schaeffler finances FAG Bearings, FAG Bearings is undercapitalized, Schaeffler pays salaries or other expenses or losses of FAG Bearings, that FAG Bearings assets were conveyed to it by Schaeffler, that FAG Bearings is described and/or

3

treated as a department or division of Schaeffler, that FAG Bearings does not act independently but takes orders from Schaeffler, in the interest of Schaeffler, and that the entities to not follow corporate formalities.

11.     For purposes of this Petition, "FAG", unless otherwise indicated, refers to Schaeffler Group USA Inc., FAG Bearings, LLC, FAG Bearings Corporation, FAG Bearing Corporation, FAG Holding Corporation, and Norma FAG Bearings Corporation.

12.     At all times relevant hereto, FAG owned and operated a manufacturing facility located at 3900 Range Line Road, Joplin, Missouri 64804.

13.     Burns & McDonnell Engineering Company, Inc. is a Missouri corporation with its principal place of business in Kansas City, Missouri. It can be served at its registered agent Incorp Service Inc., 2847 S. Ingram Mill Rd., Springfield, MO 65804.

14.     Burns & McDonnell Waste Consultants, Inc. ("WCI") was a subsidiary of Burns & McDonnell Engineering Company, Inc. until 1999. In 1999, WCI merged with Burns & McDonnell Engineering Company, Inc. Burns & McDonnell Engineering Company, Inc. is the surviving corporation and is the successor to all WCI's liabilities and assets. WCI does not exist as a separate entity.

15.     Burns & McDonnell Engineering Company, Inc. and WCI are referred to collectively as "Burns & McDonnell".

16.     At all relevant times herein, Burns & McDonnell performed various environmental consulting responsibilities related to FAG's contamination.

4

## JURISDICTION AND VENUE

17.     This Court has jurisdiction and venue given that the tortious acts occurred within the State of Missouri and Spencer was exposed to TCE in Newton County, Missouri.

18.     Defendant Burns & McDonnell is a Missouri corporation and therefore a citizen of the State of Missouri.

## STATUTE OF LIMITATIONS

19.     Spencer lived in the Village of Silver Creek, Missouri ("Silver Creek") from his birth in 1985 up to approximately 2010 (with stents living in other locations for school). From the time Spencer was in utero until approximately 1995, he was exposed to TCE from his drinking water, skin contact, and TCE vapor inhalation.

20.     In approximately March 2017, Spencer was diagnosed with Multiple Sclerosis. Accordingly, Spencer's claim did not accrue until his injuries were capable of ascertainment in 2017.

21.     Defendants, and each of them, were aware of the nature and extent of the TCE contamination but actively attempted to conceal this information from both Federal and State authorities, as well as from the public. Indeed, defendants worked together to baselessly claim that other entities were responsible for the TCE contamination, which was ultimately rejected by multiple courts.

## CASE OVERVIEW

22.     FAG operated a ball bearing manufacturing plant in Joplin, Missouri.

23.     From approximately 1975 to 1981, FAG used the volatile organic chemical TCE in its operations as a vapor degreaser.

5

Electronically Filed - Jasper County - Joplin - February 05, 2021 - 03:48 PM

24.     TCE is toxic to humans. It can enter the body when a person breathes air with TCE vapors, through skin contact, and/or drinks water containing TCE.

25.     TCE is carcinogenic to humans by all routes of exposure and poses a human health hazard for noncancer toxicity to the central nervous/neurologic system, kidney, liver, immune system, male reproductive system, and the developing embryo/fetus.

26.     FAG negligently poured, pumped, spilled or otherwise disposed of TCE into the ground, which thereby contaminated the nearby groundwater and surrounding communities.

27.     The Village of Silver Creek is located downhill from FAG.

28.     The TCE from FAG Bearing infected the water supply of Silver Creek, and in particular, the well that Spencer and his mother (while Spencer was in utero), drank from thereby contaminating the well.

### PRIOR CASES

29.     The issue of FAG Bearing contaminating the water supply of Silver Creek has been litigated at length in multiple cases, including: *Kirk v. Shaeffler Group USA, Inc., et al*, Case 3:13-CV-5032-DGK (W.D. Mo, 3/25/16); *FAG Bearing Corp. v. Gulf States Paper Co.*, No. 95-5081-CV-SW-8, 1998 WL 919115 (W.D. Mo. Sept. 30, 1998); *Lewis v. FAG Bearing Corp.*, 5 S.W. 3d 579 (Mo. App. 1999); *Liberty Mut. Ins. Co. v. FAG Bearing Corp.*, No. 94-0241-CV-W-8 (W.D. Mo. May 14, 1996); *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, No. 99-5017-CV-SW-3, 2001 WL 34118390 (W.D. Mo. May 21, 2001).

30.     In *Kirk v. Shaeffler*, the Court found the following facts have already been litigated against FAG Bearing and therefore FAG Bearing was collaterally estopped from contesting the same:

        a.     FAG Bearing released TCE into the environment in a number of different ways.

6

b.     FAG Bearing released approximately 12,000 to 25,000 gallons of TCE through waste, spills, leaks, overflowing tanks, incidental use of TCE, and dumping "still bottoms" into the ground at FAG Bearings' facility.

c.     During investigations at FAG Bearings' facility from 1991 to 1996, TCE or TCE-related chemicals were detected in at least 36 different locations across the FAG facility.

d.     FAG Bearings' employees occasionally dumped or pumped TCE directly into the ground. The highest levels of TCE contamination were found at or near these locations.

e.     The "trial", or plume, of contamination runs directly from these locations to residential wells located south of FAG Bearings' property.

f.     FAG Bearings was 100% responsible for the TCE contamination in Silver Creek, Saginaw, and on FAG's property.

g.     FAG Bearings could not account for approximately 30,000 gallons of TCE it purchased.

h.     FAG Bearings' vapor recovery system frequently and repeatedly malfunctioned, releasing large amounts of TCE into the air over a long period of time.

i.     FAG Bearings' own experts and employees have opined that these vapors then condensed and returned to the soil on FAG's property.

j.     The releases of TCE on FAG Bearings' property were predictable and foreseeable.

k.     FAG Bearings acted "deliberately" in causing the contamination in the sense that its release of TCE were "predictable and foreseeable", thus "expected" and "not accidental".

l.     FAG Bearings totally refused to cooperate in investigation and remediation of the TCE contamination.

m.     FAG Bearing was the sole cause of the TCE contamination in the groundwater at Silver Creek.

31.     Given that (1) the issues decided in the prior case(s) are identical to the issue presented in this action; (2) the prior case(s) ended with a judgment on the merits; (3) FAG Bearings was a party to the prior action; and (4) FAG Bearings had a full and fair opportunity to

7

litigate the issue in the prior case, FAG Bearings is collaterally estopped from contesting the above issues in this action.

32. FAG's acts and omissions caused the TCE contamination throughout the surrounding communities. Examples of these acts and omissions include, but are not limited to, the following:

a. FAG used large quantities of TCE from 1972 to 1982 with at least 30,000 gallons of TCE purchased from 1977 to 1982. In addition, TCE escaped from the operations of FAG, and leaked into the ground and water of FAG's property and the adjoining landowner's property, including Plaintiff.

b. From 1975 to 1981, three to four barrels of VOCs were added each month to a cleaning system used by FAG to clean ball bearings during the manufacturing process.

c. Each month, approximately three barrels of VOC sludge were poured out on the ground in a wooded area near a service building on FAG's property containing TCE.

d. VOC sludge from the cleaning system was also disposed of by pumping the sludge through a sewer line into a sewage lagoon on FAG's property.

e. A spill of between 10,000 and 11,000 gallons of VOCs occurred at FAG's plant between 1979 and 1983.

f. Defendant FAG stored an estimated 2,500 gallons of VOCs and TCE in bulging and leaking 55-gallon drums on its property between 1981 and 1983.

g. Five hundred and forty-nine (549) barrels or 30,195 gallons of TCE purchased by FAG between 1977 and 1982 cannot be accounted for by FAG's corporate officers.

h. From 1976 to 1980, liquids containing TCE were discharged onto the ground surface on FAG property.

i. During this period that FAG used TCE, FAG negligently released TCE vapors into the air.

j. Although FAG intended the TCE to be contained within a closed loop degreasing system, the system lost TCE into drains that discharged into a ditch on the grounds of FAG property, which then migrated to the south into adjoining property.

k.      Pump malfunctions in the degreasing and manufacturing system negligently released TCE by leakage onto the ground.

l.      FAG employees negligently used TCE for general cleaning use through the FAG plant. The TCE used for cleaning was not retained or recycled.

m.      Negligent releases of TCE occurred in over 13 locations on FAG property through negligent operation of the degreasing system.

n.      As late as April 1997, TCE and its degradation products remained on FAG property from the surface down to bedrock in toxic and dangerous quantities.

33.      FAG's affirmative actions and concealment caused, contributed to cause, and/or further aggravated Plaintiff Spencer Knapp's injuries.

34.      In the early 1990s, FAG hired Burns & McDonnell to act as an environmental consultant and expert in litigation related to its TCE contamination.

35.      By the time FAG hired Burns & McDonnell, both parties knew or should have known that FAG was responsible for the TCE contamination. In fact, sampling at FAG's property from 1991 through 1995 revealed significant levels of TCE and TCE degradation chemicals on FAG's property and FAG had acknowledged in prior litigation that releases of TCE had occurred on its property.

36.      Despite this, FAG and Burns & McDonnell, jointly and individually, publicly denied that FAG was responsible for the TCE contamination and/or disputed the extent and nature of the TCE contamination.

37.      By the time FAG hired Burns & McDonnell, both FAG and Burns & McDonnell knew or should have known that FAG's TCE contamination had migrated to the Village of Silver Creek.

38.      Despite this, FAG and Burns & McDonnell claimed that FAG's contamination had not migrated to Silver Creek.

9

Electronically Filed - Jasper County - Joplin - February 05, 2021 - 03:48 PM

39. Burns & McDonnell designed and conducted its field work to shield the true extent of FAG's contamination in that it:

      a.    Claimed the contamination was from other commercial industrial locations located north of FAG;

      b.    Deliberately avoided sampling locations of known releases on FAG's property;

      c.    Failed to test for contamination at shallow depths on FAG's property;

      d.    Ignored or selectively used information regarding FAG's TCE use and release of TCE such as how much TCE was utilized at the FAG facility, the testimony of FAG employees regarding dumping activities, and various findings of FAG's prior consultants, the EPA, and the MDNR; and

      e.    Concealed and/or misrepresented test results.

40. In addition, Burns & McDonnell's field work affirmatively contributed to, and worsened the spread of the TCE contamination throughout Silver Creek by:

      a.    Improperly installing a monitoring well, which allowed a large volume of groundwater to enter a bore hole land cascade into the bottom of the well contaminating the deep aquifer; and

      b.    Dumped contaminated water onto the ground and into a pond which discharges to an overflow creek.

41. In *FAG Bearings Corp. v. Gulf State Paper Col*, 198 WL 919115 (W.D. MO Sept. 30, 1998), the Court found that FAG paid Burns & McDonnell "approximately $5 million to conspire with FAG's attorneys to create theories against defendants and other so that FAG would not have to assume responsibility for its historical TCE practices".

42. As a result of Burns & McDonnell's conduct, the TCE contamination was worsened, the extent of the TCE contamination within Silver Creek was not fully defined, the public, including plaintiff, was not adequately warned, and appropriate remediation efforts were not undertaken.

## SPENCER KNAPP

43.     The Agency for Toxic Substances and Disease Registry notes that chronic exposure to TCE had shown health effects on intrauterine and neonatal animals and specifically explained that "Developing fetuses are susceptible to the toxic effects of chemicals that can cross the placental barrier. The period of fetal development is a time when chemical exposure might do the greatest harm. Laboratory and epidemiologic studies suggest that fetal exposure to TCE may result in adverse health effects…".

44.     From the time Spencer was in his mother's womb in 1985 up until approximately September 1995, Spencer was exposed to TCE far in excess of appropriate limits.

45.     Indeed, in September 1995, Spencer's parents were notified by the Missouri Department of Natural Resources that the well they drank from was tainted with TCE, bathed in the water tainted with TCE, cooked in the water tainted with TCE, brushed his teeth in water tainted with TCE, and likely breathed vapors in the house tainted with TCE.

46.     As a direct and proximate result of Spencer's long-term exposure to TCE, he developed Multiple Sclerosis (MS) in approximately March 2017.

47.     As a result of Spencer's diagnosis with MS, he has suffered lesions in his brain, eyes, and spinal column. MS is a lifelong condition with no cure. Spencer is on state-of-the-art medications to control flare-ups and will have to remain on medication the rest of his life.

48.     Further, as Spencer ages MS takes a downward course resulting in severe physical, psychological, and emotional disability.

11

## COUNT I
## STRICT LIABILITY

Plaintiff, for his causes of action against defendants FAG states and alleges as follows:

49.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

50.     The operation of FAG's plant, entailed the use, storage, and disposal of large quantities of TCE, which constituted an abnormally dangerous activity.

51.     The use, storage, and disposal of large quantities of TCE and other VOCs constituted an abnormally dangerous activity in that:

      a.      The use, storage, and disposal of TCE presented a high degree of risk of harm to human health;

      b.      Given the hazardous nature of TCE, there was an extremely high likelihood of injury to plaintiff's health due to the escape of these chemicals into the soil, groundwater, surface water, air and environment;

      c.      Due to the inherently dangerous nature of TCE, defendants were unable to eliminate the risks of harm through the exercise of reasonable care;

      d.      The use, storage and disposal of TCE is not a matter of common usage;

      e.      The dangers associated with the use, storage, and disposal of TCE renders such use, storage and disposal of little or no benefit to the local community. Any value that the use storage and disposal of TCE had to the community, which plaintiff posits was none, was far outweighed by the dangers to human health and the surrounding environment.

52.     The operation of the plant by FAG using and disposing of large quantities of TCE, constituted an activity that was abnormally dangerous, for each of the following reasons and considerations, individually, in combination, or in the alternative:

      a.      The existence of a high degree of risk to the health and safety of the local community, property-owners surrounding the Plant, and anyone that came into contact by multiple wells and water sources improper and negligent use, storage, and disposal of TCE on the premises of the Plant;

b.    Given the hazardous nature of the TCE used, stored, and disposed of on the FAG's property, there was an extremely high likelihood of injury to Spencer's health and well-being due to the escape of TCE into the ground, groundwater and drinking water well;

c.    Due to the inherently hazardous nature of the TCE chemicals used, stored, and disposed of by FAG in the operation of the Plant, FAG Bearings was unable to eliminate the risk of harm posed by TCE through the exercise of reasonable care;

d.    The use, storage, and disposal of TCE is not a matter of common usage.

53.    The use, storage, and disposal of TCE at defendant FAG's plant were particularly at this location given:

a.    The highly permeable characteristics and drainage pathways of the karst subsurface geology of this region, in which chemical waste can easily be transported off-site in the groundwater.

b.    The presence of a shallow underlying aquifer, which provided drinking water to large number of local residents immediately adjacent to FAG's Plant; and

c.    The presence of Silver Creek, which depended on this shallow aquifer for its sole drinking water source, and which is located less than two hundred fifty (250) yards from FAG's plant.

54.    FAG knew, or should have known of, the above conditions and/or dangers, individually and/or in the aggregate, but took no action to avoid injury to the community members.

55.    The danger of injury from the above-stated abnormally dangerous conditions, was reasonably foreseeable to defendant FAG, as has been conclusively established by prior courts, but also from the existence of the abnormally dangerous activities described above.

56.    As a direct and proximate result of defendants' liability, Spencer was exposed to TCE in utero and for many years thereafter resulting in severe injuries to his mind and body, including suffering from MS.

57.     By reason of Spencer's MS, he has paid or become obligated for, and will in the future pay or become obligated for, items of expense in obtaining and receiving medical care and treatment.

58.     Prior to Spencer's diagnosis, Spencer was an able-bodied man capable of performing work and labor.  As a result of his injuries, his capabilities to perform work and labor have diminished and will be diminished in the future, said injuries, pain and damages being permanent, disabling and progressive.  Spencer has been and, in the future, will be deprived of earnings, salaries, profits, wages and pleasure.

59.     FAG's conduct manifested a complete indifference to, and a conscious disregard for, the safety and the well-being of plaintiff and others.  This conduct demonstrated recklessness, extreme indifference and conscious disregard for the safety of others, thereby justifying an award of punitive damages so as to punish the defendants and to deter defendants and others from like conduct in the future.

WHEREFORE, Plaintiffs move this Court for judgment for all damages set forth above, punitive damages, costs, interest thereon, and all other remedies available at law.

## COUNT II
## NEGLIGENCE

Plaintiff, through counsel, for his cause of action against defendants FAG, states and alleges as follows.

60.     Plaintiff incorporates by reference the preceding paragraph as though fully set forth herein.

61.     Defendants owed a duty to utilize safe chemicals in the operation of their business and dispose of any dangerous chemicals in a safe manner as to prevent harm to individuals in the surrounding area and the community.

14

62. Defendants violated this duty by their acts of carelessness and negligence for each of the following reasons, either individually, in combination or in the alternative:

     a.     Dumping TCE onto the grounds of the complex;

     b.     Failing to properly store TCE;

     c.     Failing to prevent TCE from spilling or leakage;

     d.     Failing to properly dispose of TCE;

     e.     Disposing of TCE into a sewage lagoon without taking proper precautions to prevent contamination of the surrounding soil and groundwater;

     f.     Permitting thousands of gallons of TCE to spill onto the grounds of FAG's facility between 1979 - 1983;

     g.     Failing to document and account for over 30,000 gallons of TCE purchased by FAG from 1977 - 1982;

     h.     Failing to report to the appropriate federal and state authorities various spills, leakages and disposal of TCE upon defendant FAG's property;

     i.     Failing to warn property owners of the contamination of the ground and water supply;

     j.     Failing to preventatively monitor the groundwater to determine if the manufacturing process allowed spillage or leakage of TCE;

     k.     Failing to investigate spillage and/or leakage of TCE;

     l.     Covering up and concealing spillage and/or leakage of TCE;

     m.     Failing to disclose the full extent of the contamination of TCE into the groundwater and surrounding community;

     n.     Failing to monitor the contamination;

     o.     Failing to remediate the contamination;

     p.     Violating the Missouri Clean Water Law; and/or

     q.     Violating the Missouri Hazardous Waste Management Laws.

63. The conduct of FAG as described herein above, was committed with conscious disregard for the safety of plaintiff and others, and plaintiff is entitled to seek and obtain punitive damages against defendants by reason of such conduct.

64. As a direct and proximate result of defendants' liability, Spencer was exposed to TCE in utero and for many years thereafter resulting in severe injuries to his mind and body, including suffering from MS.

65. By reason of Spencer's MS, he has paid or become obligated for, and will in the future pay or become obligated for, items of expense in obtaining and receiving medical care and treatment.

66. Prior to Spencer's diagnosis, Spencer was an able-bodied man capable of performing work and labor. As a result of his injuries, his capabilities to perform work and labor have diminished and will be diminished in the future, said injuries, pain and damages being permanent, disabling and progressive. Spencer has been and in the future will be deprived of earnings, salaries, profits, wages and pleasure.

67. FAG's conduct manifested a complete indifference to, and a conscious disregard for, the safety and the well-being of plaintiff and others. This conduct demonstrated recklessness, extreme indifference and conscious disregard for the safety of others, thereby justifying an award of punitive damages so as to punish the defendants and to deter defendants and others from like conduct in the future.

WHEREFORE, Plaintiffs move this Court for judgment for all damages set forth above, punitive damages, costs, interest thereon, and all other remedies available at law.

16

## COUNT III

Plaintiff, through counsel, for his cause of action against defendants Burns & McDonnell, states and alleges as follows.

68.     Plaintiff incorporates the proceeding paragraphs as though fully set forth herein.

69.     Defendants Burns & McDonnell had a duty by contract and by holding themselves out as professional engineers to provide adequate environmental surveys, monitor for TCE hazards, and warn of TCE contamination at and surrounding FAG's facility.

70.     Defendants Burns & McDonnell acting by and through their agents and employees, failed to use ordinary care and was thereby negligent, either individually, in combination, and/or in the alternative:

      a.      Failing to conduct an adequate environmental survey;

      b.      Focusing its investigation and claiming that the TCE contamination was from industrial locations north of FAG;

      c.      Failing to investigate shallow soil or groundwater contamination;

      d.      Obtaining samples in an effort to minimize the extent of the TCE contamination;

      e.      Failing to monitor and properly evaluate the extent of the TCE contamination;

      f.      Denying that the TCE contamination had migrated to Silver Creek;

      g.      Failing to assist in remediation efforts;

      h.      Contributing to the spread of the TCE contamination;

      i.      Failing to warn of TCE contamination;

      j.      Failing to follow orders and directives from Government entities, including the EPA and MODNR;

      k.      Failing to inform government agencies of the extent of the contamination;

      l.      Misleading the public as to the extent of the contamination;

   m.  Failing to prevent hazardous waste from migrating off FAG's property;

   n.  Negligently boring holes into the bedrock that contributed to the spread of the TCE contamination;

   o.  Contaminating deep aquifers;

   p.  Failing to report known spills to government agencies; and/or

   q.  All other acts of carelessness and negligence as learned through discovery.

  71.  As a direct and proximate result of defendants' liability, Spencer was exposed to TCE in utero and for many years thereafter resulting in severe injuries to his mind and body, including suffering from MS.

  72.  By reason of Spencer's MS, he has paid or become obligated for, and will in the future pay or become obligated for, items of expense in obtaining and receiving medical care and treatment.

  73.  Prior to Spencer's diagnosis, Spencer was an able-bodied man capable of performing work and labor. As a result of his injuries, his capabilities to perform work and labor have diminished and will be diminished in the future, said injuries, pain and damages being permanent, disabling and progressive. Spencer has been and in the future will be deprived of earnings, salaries, profits, wages and pleasure.

  74.  Burns & McDonnell's conduct manifested a complete indifference to, and a conscious disregard for, the safety and the well-being of plaintiff and others. This conduct demonstrated recklessness, extreme indifference and conscious disregard for the safety of others, thereby justifying an award of punitive damages so as to punish the defendants and to deter defendants and others from like conduct in the future.

  WHEREFORE, Plaintiffs move this Court for judgment for all damages set forth above, punitive damages, costs, interest thereon, and all other remedies available at law.

## COUNT IV
## PUNITIVE DAMAGES

Plaintiff, through counsel, for his cause of action against defendants, state and allege as follows.

75.     Plaintiff incorporates the proceeding paragraphs as though fully set forth herein.

76.     Defendants' above-mentioned acts and omissions were committed with conscious disregard for the safety and well-being of the public, and plaintiff.

77.     Defendants' conduct created a high degree of probability for severe illness and disease.

WHEREFORE, Plaintiffs move this Court for judgment for all damages set forth above, punitive damages, costs, interest thereon, and all other remedies available at law.

## COUNT V
## LOSS OF CONSORTIUM

Plaintiff Elizabeth Ygartua, through counsel, for her cause of action against defendants, states and alleges as follows:

78.     Plaintiff incorporates by reference the preceding paragraphs as though fully set forth herein.

79.     Elizabeth is and, during all times mentioned herein, was the wife of Plaintiff Spencer Knapp.

80.     As a result of defendants' negligence, Elizabeth sustained the following damages:

a.      One or more of the following: loss of the affection, attention, services, support, comfort, consortium and companionship of her husband;

b.      Reasonable value of nursing services provided to her husband;

c.      Medical expenses for her husband; and/or

d.      Loss of household contributions.

19

WHEREFORE, plaintiff Elizabeth Ygartua prays that she be awarded fair and reasonable damages against defendants, jointly and severally, for her costs herein expended, for post-judgment interest, and for all other appropriate relief under the circumstances.

**STRONG-GARNER-BAUER, P.C.**

Steve Garner - MoBar #35899
Grant Rahmeyer - MoBar #58897
415 E. Chestnut Expressway
Springfield, Missouri 65802
Telephone: (417) 887-4300
Facsimile: (417) 887-4385
sgarner@stronglaw.com
grahmeyer@stronglaw.com
*Attorneys for Plaintiffs*

20



# IN THE 29TH JUDICIAL CIRCUIT, JASPER COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>DEAN GERALD DANKELSON | Case Number: 21AO-CC00037 |
| Plaintiff/Petitioner:<br>SPENCER KNAPP ET AL<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>GRANT STEFFEN RAHMEYER<br>415 E CHESTNUT EXPWY<br>SPRINGFIELD, MO 65802 |
| Defendant/Respondent:<br>FAG BEARING CORP ET AL | Court Address:<br>601 S. Pearl<br>JOPLIN, MO 64801 |
| Nature of Suit:<br>CC Pers Injury-Other | |

*FILED*
*Melissa Holcomb - Clerk*
*2/10/2021*
*JASPER COUNTY CIRCUIT COURT*
*JOPLIN, MISSOURI*

(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: **BURNS & MCDONNELL WASTE CONSULTANTS INC**

**INCORP SERVICES INC**
**2847 S. INGRAM MILL ROAD A100**
**SPRINGFIELD, MO 65804**



COURT SEAL OF

JASPER COUNTY

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

| | |
|---|---|
| 10-FEB-2021 | Melissa Holcomb – Circuit Clerk |
| | */S/Dana J. Attwood, D.C.* |
| Date | Deputy Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____     _____
Date          Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 21-SMCC-81**          1 of 1          Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 3:21-cv-05035-MDH   Document 1-1   Filed 04/14/21   Page 24 of 40



# IN THE 29TH JUDICIAL CIRCUIT, JASPER COUNTY, MISSOURI

| Judge or Division:<br>DEAN GERALD DANKELSON | Case Number: 21AO-CC00037 | |
|---|---|---|
| Plaintiff/Petitioner:<br>SPENCER KNAPP ET AL<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>GRANT STEFFEN RAHMEYER<br>415 E CHESTNUT EXPWY<br>SPRINGFIELD, MO 65802 | *FILED*<br>*Melissa Holcomb - Clerk*<br>*2/10/2021*<br>*JASPER COUNTY CIRCUIT COURT*<br>*JOPLIN, MISSOURI* |
| Defendant/Respondent:<br>FAG BEARING CORP ET AL | Court Address:<br>601 S. Pearl<br>JOPLIN, MO 64801 | |
| Nature of Suit:<br>CC Pers Injury-Other | | (Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **BURNS & MCDONNELL ENGINEERING COMPANY INC**

**INCORP SERVICES INC**
**2847 S. INGRAM MILL ROAD A100**
**SPRINGFIELD, MO 65804**



COURT SEAL OF

CIRCUIT COURT OF MISSOURI

JASPER COUNTY

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

| 10-FEB-2021 | Melissa Holcomb – Circuit Clerk |
|---|---|
| _____ | */S/Dana J. Attwood, D.C.* |
| Date | Deputy Clerk |

Further Information:

## Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to:
_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____     _____
Printed Name of Sheriff or Server         Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____     _____
                     Date                      Notary Public

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only:* **Document Id # 21-SMCC-80**    1 of 1    Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 3:21-cv-05035-MDH   Document 1-1   Filed 04/14/21   Page 25 of 40



# IN THE 29TH JUDICIAL CIRCUIT, JASPER COUNTY, MISSOURI

| Judge or Division:<br>DEAN GERALD DANKELSON | Case Number: 21AO-CC00037 | |
|---|---|---|
| Plaintiff/Petitioner:<br>SPENCER KNAPP ET AL<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>GRANT STEFFEN RAHMEYER<br>415 E CHESTNUT EXPWY<br>SPRINGFIELD, MO 65802 | *FILED*<br>*Melissa Holcomb - Clerk*<br>*2/10/2021*<br>*JASPER COUNTY CIRCUIT COURT*<br>*JOPLIN, MISSOURI* |
| Defendant/Respondent:<br>FAG BEARING CORP ET AL | Court Address:<br>601 S. Pearl<br>JOPLIN, MO 64801 | Greene County<br>Sheriff's Office |
| Nature of Suit:<br>CC Pers Injury-Other | | (Date File Stamp) |

## Summons in Civil Case

FEB 2 6 2021

**The State of Missouri to:** BURNS & MCDONNELL WASTE CONSULTANTS INC

RECEIVED<br>Civil Office

INCORP SERVICES INC<br>2847 S. INGRAM MILL ROAD A100<br>SPRINGFIELD, MO 65804

**COURT SEAL OF**

**JASPER COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

Melissa Holcomb – Circuit Clerk

| 10-FEB-2021 | /S/Dana J. Attwood, D.C. |
|---|---|
| Date | Deputy Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _____ KATLA MPBET _____ (name) _KIA_ _____ (title).

☐ other: _____

Served at _____ (address)

in _Califorms_ (County/City of St. Louis), MO, on _7-28-21_ (date) at _1550_ (time).

_Vz ROBBARBAN_

| Printed Name of Sheriff or Server | Signature of Sheriff or Server |
|---|---|

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____

| | Date | | Notary Public |
|---|---|---|---|

**Sheriff's Fees, if applicable**

| Summons | $ _____ | 52404 |
|---|---|---|
| Non Est | $ _____ | 1 of 2 |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 | |
| Mileage | $ 35.00 ( _____ miles @ $._____ per mile) | |
| **Total** | $ _____ | |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.


164

# IN THE 29TH JUDICIAL CIRCUIT, JASPER COUNTY, MISSOURI



| Judge or Division:<br>DEAN GERALD DANKELSON | Case Number: 21AO-CC00037 | |
|---|---|---|
| Plaintiff's/Petitioner:<br>SPENCER KNAPP ET AL<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>GRANT STEFFEN RAHMEYER<br>415 E CHESTNUT EXPWY<br>SPRINGFIELD, MO 65802 | **FILED**<br>*Melissa Holcomb - Clerk*<br>*2/10/2021*<br>*JASPER COUNTY CIRCUIT COURT*<br>*JOPLIN, MISSOURI* |
| Defendant/Respondent:<br>FAG BEARING CORP ET AL | Court Address:<br>601 S. Pearl<br>JOPLIN, MO 64801 | Greene County<br>Sheriff's Office |
| Nature of Suit:<br>CC Pers Injury-Other | | FEB 2 6 2021<br>(Date File Stamp) |

## Summons in Civil Case

The State of Missouri to: **BURNS & MCDONNELL ENGINEERING COMPANY INC** RECEIVED
Civil Office

**INCORP SERVICES INC**
**2847 S. INGRAM MILL ROAD A100**
**SPRINGFIELD, MO 65804**

COURT SEAL OF

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

JASPER COUNTY

| 10-FEB-2021 | Melissa Holcomb – Circuit Clerk<br>*/S/Dana J. Attwood, D.C.* |
|---|---|
| Date | Deputy Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: ~~RM CAMPBET~~ (name) ~~R / A~~ _____ (title).

☐ other: _____

Served at _____ (address)

in ~~ARGONS~~ (County/City of St. Louis), MO, on 3-2-21 (date) at 155 (time).

_____
Printed Name of Sheriff or Server

_____
Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____

| | Date | | Notary Public |

| **Sheriff's Fees, if applicable** | | |
|---|---|---|
| Summons | $_____ 52404 | |
| Non Est | $_____ 2 of 2 | |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 | |
| Mileage | $ 35.00 (___ miles @ $.___ per mile) | |
| Total | $ | |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) *For Court Use Only: Document Id # 21-SMCC-80*    1 of 1    Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



# IN THE 29TH JUDICIAL CIRCUIT, JASPER COUNTY, MISSOURI

Electronically Filed - Jasper County - Joplin - March 11, 2021 - 09:15 AM

| | |
|---|---|
| Judge or Division:<br>DEAN GERALD DANKELSON | Case Number: 21AO-CC00037 |
| Plaintiff/Petitioner:<br>SPENCER KNAPP ET AL<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>GRANT STEFFEN RAHMEYER<br>415 E CHESTNUT EXPWY<br>SPRINGFIELD, MO 65802 |
| Defendant/Respondent:<br>FAG BEARING CORP ET AL | Court Address:<br>601 S. Pearl<br>JOPLIN, MO 64801 |
| Nature of Suit:<br>CC Pers Injury-Other | |

FILED
Melissa Holcomb - Clerk
2/10/2021
JASPER COUNTY CIRCUIT COURT
JOPLIN, MISSOURI

Greene County
Sheriff's Office
FEB 2 6 2021
(Date File Stamp)

## Summons in Civil Case

The State of Missouri to: BURNS & MCDONNELL ENGINEERING COMPANY INC

RECEIVED
Civil Office

INCORP SERVICES INC
2847 S. INGRAM MILL ROAD A100
SPRINGFIELD, MO 65804

**COURT SEAL OF**

*(Court Seal)*

**JASPER COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

Melissa Holcomb – Circuit Clerk

| 10-FEB-2021 | /S/Dana J. Attwood, D.C. |
|---|---|
| Date | Deputy Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☑ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _K?M CMP/SRT_ (name) _R/A_ (title).

☐ other: _____

Served at _____ (address)

in _GRGOMG_ (County/City of St. Louis), MO, on _3-2-21_ (date) at _155_ (time).

Printed Name of Sheriff or Server _____ Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____
Date _____ Notary Public

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $_____ | 52404 |
| Non Est | $_____ | |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 | 2of2 |
| Mileage | $ 35.00 ( _____ miles @ $_____ per mile) | |
| Total | $_____ | |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - Jasper County - Joplin - March 11, 2021 - 09:15 AM

164



# IN THE 29TH JUDICIAL CIRCUIT, JASPER COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>DEAN GERALD DANKELSON | Case Number: 21AO-CC00037 |
| Plaintiff/Petitioner:<br>SPENCER KNAPP ET AL | Plaintiff's/Petitioner's Attorney/Address<br>GRANT STEFFEN RAHMEYER<br>415 E CHESTNUT EXPWY<br>SPRINGFIELD, MO 65802 |



FILED<br>Melissa Holcomb - Clerk<br>2/10/2021<br>JASPER COUNTY CIRCUIT COURT<br>JOPLIN, MISSOURI

| | |
|---|---|
| vs. | |
| Defendant/Respondent:<br>FAG BEARING CORP ET AL | Court Address:<br>601 S. Pearl<br>JOPLIN, MO 64801 |
| Nature of Suit:<br>CC Pers Injury-Other | |

Greene County
Sheriff's Offi (Date File Stamp)

## Summons in Civil Case

FEB 2 6 2021

The State of Missouri to: **BURNS & MCDONNELL WASTE CONSULTANTS INC**

INCORP SERVICES INC
2347 S. INGRAM MILL ROAD A100
SPRINGFIELD, MO 65804

RECEIVED
Civil Office

**COURT SEAL OF**

**JASPER COUNTY**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

Melissa Holcomb – Circuit Clerk

|  |  |
|---|---|
| 10-FEB-2021 | /S/Dana J. Attwood, D.C. |
| Date | Deputy Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the defendant/respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the defendant/respondent with _____, a person of the defendant's/respondent's family over the age of 15 years who permanently resides with the defendant/respondent.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the complaint to: _KAI LAMBERT_ (name) _KLA_ _____ (title).

☐ other: _____.

Served at _____ (address)

in _CALIFORNIA_ (County/City of St. Louis), MO, on _7-2-21_ (date) at _1550_ (time).

_M ROBERTS_

| Printed Name of Sheriff or Server | Signature of Sheriff or Server |
|---|---|

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on _____ (date).

My commission expires: _____

| Date | Notary Public |
|---|---|

| Sheriff's Fees, if applicable | | |
|---|---|---|
| Summons | $ | 52404 |
| Non Est | $ | 1of2 |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $ 10.00 | |
| Mileage | $35.00 | (_____ miles @ $._____ per mile) |
| Total | $ | |

A copy of the summons and a copy of the petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (06-18) SM30 (SMCC) For Court Use Only: Document Id # 21-SMCC-81    1 of 1    Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo



Electronically Filed - Jasper County - Joplin - April 01, 2021 - 02:26 PM

# IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI

| | | |
|---|---|---|
| SPENCER KNAPP and | ) | |
| ELIZABETH YGARTUA | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 20AO-CC00037 |
| vs. | ) | |
| | ) | |
| SCHAEFFLER GROUP USA, INC., et | ) | |
| al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS BURNS & MCDONNELL ENGINERING COMPANY, INC. AND BURNS & MCDONNELL WASTE CONSULTANTS, INC.'S MOTION TO DISMISS COUNTS III-V WITH PREJUDICE

## **INTRODUCTION AND FACTUAL BACKGROUND**

As it relates to its claims against Burns & McDonnell Engineering Company, Inc. and Burns & McDonnell Waste Consultants, Inc. (collectively, "Burns & McDonnell"), Spencer Knapp ("Knapp") and Elizabeth Ygartua's (collectively, "Plaintiffs") petition alleges as follows: FAG Bearings Corporation ("FAG") used trichloroethylene ("TCE") at its manufacturing facility from 1972 to 1982 to clean ball bearings during their manufacturing process. (Petition, ¶ 32). FAG improperly disposed of the chemical waste from the manufacturing process, and such waste contained TCE. *Id*. FAG's improper disposal caused the groundwater around FAG's property to become contaminated and for TCE vapors to release into the air. *Id*.

In September 1995, the Missouri Department of Natural Resources notified Plaintiff Knapp's parents that the well they utilized in their daily lives had been, and was still, contaminated with TCE. (Petition, ¶ 45). From 1985 to 1995, Plaintiff Knapp "was exposed to TCE from his drinking water, skin contact, and TCE vapor inhalation." (Petition, ¶ 19).

In 1996, FAG hired Burns & McDonnell "to act as an environmental consultant and expert in litigation related to its TCE contamination." (Petition, ¶ 34).[1] This field work included the installation of monitoring wells in and around FAG's property to test for TCE

---

[1] Plaintiffs' factual allegations against Burns & McDonnell rely heavily on a previous court's factual findings in *FAG Bearings Corp. v. Gulf State Paper Co.*, No. 95-5081-CV-SW-8, 1998 WL 919115 (W.D. Mo. Sept. 30, 1998). (Petition, ¶ 29-31, 41); *see* Rule 55.12. Though Plaintiffs allege FAG hired Burns & McDonnell "[i]n the early 1990s," the *Gulf State Paper Co.* court makes plain in its opinion that Burns & McDonnell was not involved with FAG and its TCE contamination until 1996. 1998 WL 919115, at *9-10; *see also, Kirk v. Schaeffler Group USA, Inc.*, No. 3:13-cv-5032, 2016 WL 593910, at *6 (W.D. Mo. Feb. 12, 2016).

Electronically Filed - Jasper County - Joplin - April 01, 2021 - 02:26 PM

contamination and conduct environmental surveys in connection with this testing. (Petition, ¶ 40); *FAG Bearings Corp. v. Gulf States Paper Co.*, No. 95-5081-CV-SW-8, 1998 WL 919115, at *10 (Sept. 30, 1998), cited by Plaintiffs. (Petition, ¶ 41). Plaintiffs allege Burns & McDonnell was negligent in performing its duties prescribed by its contract with FAG, specifically that Burns & McDonnell "designed and conducted its field work to shield the true extent of FAG's contamination" and that its "field work affirmatively contributed to, and worsened the spread of the TCE contamination throughout Silver Creek" through the improper installation of, and improper disposal of water from, one of its monitoring wells and the alleged improper disposal of contaminated water from one of the wells. (Petition, ¶¶ 39-42).

Burns & McDonnell moves the Court to dismiss all claims against it, specifically Counts III-V of Plaintiffs Spencer Knapp and Elizabeth Ygartua's petition for failure to state a claim upon which relief can be granted. Rule 55.27(a)(6). By Plaintiffs' own admission, Knapp's last year of TCE exposure was a year prior to Burns & McDonnell having *any* connection with FAG or the contaminated property.[2] In addition, dismissal is warranted because Plaintiffs have not and cannot plead facts sufficient to establish a duty owed by Burns & McDonnell to them. Even if Plaintiffs could establish a duty, their claims against Burns & McDonnell are barred by § 516.097 RSMo 2016.[3] Additionally, Plaintiffs'

---

[2] Plaintiff Elizabeth Ygartua's cause of action for loss of consortium is derivative of Plaintiff Spencer Knapp's causes of actions and claims of exposure to TCE—Plaintiffs' petition contains no allegations of Ygartua being exposed to TCE. (Petition, ¶¶ 78-80).

[3] All statutory references are to RSMo 2016, as amended, unless otherwise noted.

3

Count IV seeking punitive damages, is not properly before this Court under § 510.261 and therefore must be dismissed.

## ARGUMENT

### A.    Standard of Review

When reviewing a motion to dismiss, the Court assumes all of plaintiff's factual allegations in the petition are true and makes "no attempt to weigh their credibility or persuasiveness." *Fenlon v. Union Elec. Co.*, 266 S.W.3d 852, 854 (Mo. App. 2008). "[T]he petition is reviewed in an almost academic manner to determine if the facts alleged meet the elements of a recognized cause of action." *Freeman v. Leader Nat. Ins. Co.*, 58 S.W.3d 590, 596-97 (Mo. App. 2001). However, "a pleader may literally plead himself out of court, and when facts constituting a defense appear affirmatively on the face of the petition, the defense may be interposed by motion to dismiss without the necessity of a specific motion or answer." *Id*. at 597. Similarly, "[a] motion to dismiss based on an affirmative defense may be sustained if the defense is irrefutably shown by the petition." *Huch v. Charter Comms., Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009) (quoting *Elam v. Dawson*, 156 S.W.3d 807, 808 (Mo. App. 2005)).

### B.    Plaintiffs' petition fails to state a claim against Burns & McDonnell because all damages were incurred prior to Burns & McDonnell's involvement with the TCE contamination.

As alleged in Plaintiffs' petition, Knapp's exposure to TCE "from his drinking water, skin contact, and TCE vapor inhalation" lasted from when he was in utero in 1985 "until approximately 1995[.]" (Petition, ¶¶ 19, 44). As noted in *Gulf States Paper Co.*, a case to which Plaintiffs cite several times to support their factual allegations, Burns &

4

McDonnell did not have any interaction with the TCE contamination on FAG's property until at least 1996 when it conducted its "1996 investigation." 1998 WL 919115, at *9-10; *see* Petition, ¶¶ 29, 41.

Even taking Plaintiff's allegations as they pertain to Burns & McDonnell as true, none of Burns and McDonnell's alleged actions could have possibly affected Plaintiffs because Burns & McDonnell had no interaction with the land in question until well after Knapp's exposure ended and his family had been notified of the contamination. (Petition, ¶¶ 19, 45). Put simply, Plaintiffs' petition definitively establishes no causal connection between Burns & McDonnell's conduct and any of Plaintiffs' injuries.

"Actionable negligence requires a causal connection between the conduct of the defendant and the resulting injury to the plaintiff." *Simonian v. Gevers Heating & Air Conditioning, Inc.*, 957 S.W.2d 472, 474 (Mo. App. 1997). To establish causation, alleged conduct must be both the cause in fact and the proximate cause of plaintiff's injury. *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 657 (Mo. banc 2019). "The test for actual cause asks whether the plaintiff would have been injured but for some conduct on the defendant's behalf." *Id*. Knapp's alleged exposure occurred between 1985 and 1995. (Petition, ¶ 19). Burns & McDonnell began its work with FAG in 1996. (Petition, ¶ 29-31, 41); *Gulf State Paper Co.*, 1998 WL 919115, at *9-10. It is axiomatic that an injury sustained prior to allegedly negligent conduct could not have been caused by that conduct.

**C.** **Plaintiffs have not and cannot plead facts demonstrating Burns & McDonnell owed Plaintiffs a duty due to its private, contractual work for FAG.**

Plaintiffs allege Burns & McDonnell "had a duty by contract and by holding themselves out as professional engineers to provide adequate environmental surveys, monitor for TCE hazards, and warn of TCE contamination at and surrounding FAG's facility." (Petition, ¶ 69). Such pleading ignores the general common law rule "that a defendant who has contracted with another owes no duty to a plaintiff who was not a party to the contract, nor can that plaintiff sue for the negligent performance of the contract." *Hardcore Concrete, LLC v. Fortner Ins. Services, Inc.*, 220 S.W.3d 350, 358 (Mo. App. 2007); *Haney v. Fire Ins. Exchange*, 277 S.W.3d 789, 792 (Mo. App. 2009) (holding a company hired by insurer to conduct environmental study on home, and who discovered dangerous conditions in the home because of the study, owed no duty to warn third-party construction workers working in the home of the dangerous condition).

In *Westerhold v. Carroll*, the Missouri Supreme Court considered whether an absence of contractual privity operates as a *per se* bar on suits based on negligent performance of the contract. 419 S.W.2d 73 (Mo. banc 1967). The *Westerhold* Court identified two fundamental policy reasons for not imposing a duty to third parties in the absence of privity: (1) avoidance of liability to an unlimited number, or to an indeterminate class, of potential claimants, and (2) avoidance of burdening those who contract with obligations and liabilities to others which parties would not normally assume. *Id*. at 77. Following *Westerhold*, the court in *Fleischer v. Hellmuth, Obata & Kassabaum, Inc.*,

6

Electronically Filed - Jasper County - Joplin - April 01, 2021 - 02:26 PM

articulated the proper analysis to determine whether a plaintiff without contractual privity

may sue for negligent performance of a contract:

> Our Supreme Court in *Westerhold* provided guidance as to conditions and circumstances which are important in determining whether a defendant is liable to a third party with whom defendant is not in privity. To be considered first are the policy concerns of exposing the defendant to an unlimited number, or indeterminate class, of potential claimants and depriving parties of control over their contracts. *If neither of these concerns are present in a particular case*, then the determination "involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to defendant's conduct, and the policy of preventing future harm.

870 S.W.2d 832, 835 (Mo. App. 1993) (emphasis added).

Both of the policy concerns articulated in *Westerhold* are present here. Finding a

duty under the facts as alleged by Plaintiffs would expose Burns & McDonnell to an

indeterminate, unlimited class of potential claimants and deprive Burns & McDonnell of

control over its contracts—burdening it with obligations to others it would never assume

normally. These considerations alone require dismissal based on Burns & McDonnell's

lack of duty to Plaintiffs.

Even if neither of those policy concerns articulated are present, the balancing of

factors outlined by *Fleischer* support dismissal. Based on the facts alleged in Plaintiffs'

petition, no court could reasonably conclude that the private transaction between FAG and

Burns & McDonnell contemplated Plaintiffs in any way. *See Haney*, 277 S.W.3d at 791

(citing *Nitro Distributing, Inc. v. Dunn*, 194 S.W.3d 339, 345 (Mo. banc 2006)) ("[P]arties

are strongly presumed to enter agreements only to benefit themselves, not third parties[.]").

Nor were Plaintiffs' injuries a foreseeable result of a private transaction to survey and test groundwater around FAG's property. Further, as alleged, there is no possible connection between Burns & McDonnell's conduct and any of Plaintiffs' alleged injuries.

Burns & McDonnell entered its contract with FAG in response to contamination which had already occurred, and FAG hired Burns & McDonnell to privately mitigate FAG's potential liability resulting therefrom. Under Plaintiffs' theory, whenever Burns & McDonnell entered into the private contract with FAG, it immediately assumed a duty to a seemingly unlimited number of potential plaintiffs for private work it was conducting for FAG. If this was the intent of the law, no private company would ever agree to perform private environmental engineering services on already-contaminated property.

**D.      Section 516.097, Missouri's statute of repose for engineers, bars Plaintiffs' claims against Burns & McDonnell because more than 10 years have passed since Burns & McDonnell installed the monitoring wells on FAG's property.**

Section 516.097 provides, in part:

1. Any action to recover damages for economic loss, personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property, including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, *shall be commenced within ten years of the date on which such improvement is completed.*
2. This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement.

(*emphasis added*). "The purpose of § 516.097 is to protect those providing … engineering … services from indeterminate liability." *Magee v. Blue Ridge Prof. Bldg. Co., Inc.*, 821 S.W.2d 839, 843 (Mo. banc 1991). In determining whether an action falls within §

8

516.097's ambit, the Court looks to whether a defendant's connection to the defective or unsafe improvements to real property arises out of any connection other than their role as the engineer on the project at issue. *Id.*

Plaintiffs allege Burns & McDonnell's liability stems from its work for FAG designing and conducting field work and providing general engineering services related to the testing of FAG's contamination of its property and Silver Creek with TCE. Specifically, Burns & McDonnell's alleged liability stems from its drilling and installation of monitoring wells on and around FAG's property to test for TCE contamination and its work as an environmental engineering consultant for FAG responding to its TCE contamination of the surrounding area. Burns & McDonnell used those wells to test samples around the area for TCE contamination. *See Gulf States*, 1998 WL 919115, at *9-10, cited by and relied upon by Plaintiffs. (Petition, ¶ 29, 41); *supra*, n.1. It was the installation of one of these wells, FAG-5, that the Court in *Gulf States* found possibly "contributed to the spread of contamination[,]" *Gulf States*, at *10, in that it allegedly "allowed a large volume of groundwater to enter a borehole and cascade into the bottom of the well contaminating the deep aquifer." (Petition, ¶ 47-48).

There is no dispute that Burns & McDonnell's only connection to the liability alleged by Plaintiffs is through its work as an engineering firm contracting to provide engineering services to FAG, specifically the drilling of monitoring wells, subsequent testing of the area using those wells, and general environmental engineering consultation. As a result, under § 516.097, any cause of action against Burns & McDonnell related to its work for FAG accrued after its installation of the monitoring wells was complete. Though

9

Electronically Filed - Jasper County - Joplin - April 01, 2021 - 02:26 PM

the Plaintiffs fail to allege specific dates, the 1998 court opinion on which Plaintiffs rely refers to Burns & McDonnell's well installation as part of "FAG's 1996 investigation." *Gulf States Paper Co.*, 1998 WL 919115, at *10 (W.D. Mo. Sept. 30, 1998) ("It is possible that [Randy] Overton's *1996 investigation* at FAG contributed to the spread of contamination."). *Id.* at *10 (emphasis added). It has clearly been more than 10 years since Burns & McDonnell completed any activity related to the monitoring wells they installed.

Thus, § 516.097 operates to exclude any claim against Burns & McDonnell related to this work. Plaintiffs' claims against Burns & McDonnell are filed well after the statute of repose ran and are therefore barred. *See Amber-Phillips v. SSM Depaul Health Ctr.*, 459 S.W.3d 901, 910 (Mo. banc 2015) (noting under § 516.097, "the failure to bring suit within 10 years extinguishes the cause of action" even if plaintiffs discovered the wrong at a later point).

**E.  Section 510.261(5), governing punitive damages in civil actions, bars Plaintiffs' claims for punitive damages because under the recent amendment, the initial pleading in a civil action shall not contain a claim for punitive damages.**

Section 510.261(5) provides, in relevant part: "No initial pleading in a civil action shall contain a claim for a punitive damage award." Instead, § 510.261(5) requires that plaintiffs file a motion for leave of court to seek punitive damages, and that such motion "is supported by affidavits, exhibits, or discovery materials establishing a reasonable basis for recovery of punitive damages." *Id*. This statute was recently enacted and applies to causes of action filed on or after August 28, 2020. § 510.262. As Plaintiffs filed the present action in February, 2021, their claim for punitive damages must be dismissed.

**CONCLUSION**

For the foregoing reasons, this Court should sustain Burns & McDonnell's motion

to dismiss.

Dated:        April 1, 2021                Respectfully submitted,

                                           **MILLER SCHIRGER, LLC**

                                           /s/ Stephen R. Miller
                                           Stephen R. Miller MO # 33344
                                           Toby C. Hausner MO # 66884
                                           Samuel N. Sherman MO # 71171
                                           4520 Main Street, Suite 1570
                                           Kansas City, MO 64111
                                           816-561-6500
                                           816-561-6501 (f)
                                           smiller@millerschirger.com
                                           thausner@millerschirger.com
                                           ssherman@millerschirger.com

                                           ATTORNEYS FOR DEFENDANTS
                                           BURNS & MCDONNELL
                                           ENGINEERING COMPANY, INC., and
                                           BURNS & MCDONNELL WASTE
                                           CONSULTANTS, INC.

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the above Motion to Dismiss was sent via
email this 1st day of April, 2021, to:

Steve Garner
Grant Rahmeyer
Strong Garner-Bauer, P.C.
415 E. Chestnut Expressway
Springfield, MO 65802
sgarner@stronglaw.com
grahmeyer@stronglaw.com

                      /s/ Stephen R. Miller

11