# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHWEST DIVISION

| | | |
|---|---|---|
| SPENCER KNAPP and ELIZABETH YGARTUA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 3:21-cv-05035-MDH |
| SCHAEFFLER GROUP USA INC. and FAG BEARINGS, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

Before the Court is Defendants' Partial Motion to Dismiss. (Doc. 24). For the reasons set forth herein, the Motion is **GRANTED** in its entirety.

## BACKGROUND

Plaintiffs Knapp and Ygartua, who are husband and wife, filed their Complaint on February 5, 2021. ¶¶ 1, 79. Plaintiffs allege that FAG Bearings, LLC ("FAG Bearings") used trichloroethylene ("TCE") at its ball bearing manufacturing facility in Joplin, Missouri from 1975 to 1981, ¶¶ 22–23, and that FAG Bearings released TCE in or around its facility during that time, ¶ 26. Plaintiffs further allege that Knapp was exposed to TCE released by FAG Bearings from his conception in 1985 until September 1995, ¶¶ 28, 44, and that he developed multiple sclerosis ("MS") as a result, ¶ 46. Plaintiffs nowhere allege that Ygartua was exposed to TCE. ¶¶ 78–80. Plaintiffs claim Strict Liability (Count I), Negligence (Counts II and III), Punitive Damages (Count IV), and Loss of Consortium (Count V). ¶¶ 49–80. Plaintiffs assert claims against both FAG Bearings and Schaeffler Group USA, Inc. ("Schaeffler"). Schaeffler acquired FAG Bearings as a subsidiary in 2005.

1

Defendants, pursuant to Fed. Rule Civ. P. 12(b)(6) move this Court to partially dismiss Plaintiffs' Complaint for failure to state a claim upon which relief could be granted. FAG Bearings requests that the Court dismiss Plaintiffs' strict liability claim (Count I), and Schaeffler requests that the Court dismiss all claims against it.

## STANDARD

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *NEXTEP, LLC v. Kaba Benzing America, Inc.*, 2007 WL 4218977, *1 (E.D. Mo. 2007). When considering a 12(b)(6) motion, the factual allegations of a complaint are assumed true and are considered in the light most favorable to the plaintiff. *Id.* To avoid dismissal for failure to state a claim, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id*. This statement requires that the plaintiff give the defendant facts sufficient to give fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Id.* The court may dismiss the complaint when it is clear that no relief can be granted under any set of facts that could be proved consistent with the complaint. *See id.*

## DISCUSSION

### A. Strict liability claim

Strict liability attaches when an activity is "abnormally dangerous." *Rychnovsky v. Cole*, 119 S.W.3d 204, 211 (Mo. Ct. App. 2003). The doctrine "is very narrowly applied in Missouri." *Bennett v. Mallinckrodt, Inc.*, 698 S.W.2d 854, 868 (Mo. Ct. App. 1985). Indeed, Missouri courts have found only two activities—blasting and radioactive nuclear emission—to be "abnormally dangerous." *A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 841 (E.D. Mo. 2018); *see also Rychnovsky*, 119 S.W.3d at 211. To meet that high standard, a plaintiff must plead several elements, including

2

that any risk of great "harm" posed by the defendant's activity "cannot be eliminated." *Id*. The failure to "properly allege" even "one of the" elements requires dismissal. *Scott v. Dyno Nobel, Inc.*, No. 4:16-CV-1440-HEA, 2017 WL 395298, at *3 (E.D. Mo. Jan. 30, 2017) (citing *Rychnovsky*, 119 S.W.3d at 211).

Plaintiffs assert that FAG Bearings' manufacturing activity—making "ball bearing[s]," using TCE as a "degreaser," and storing used TCE—was "abnormally dangerous." Compl. ¶¶ 22–23, 50. This Court already has held that it was not. In 2016, this Court dismissed a strict liability claim brought by another plaintiff against FAG Bearings in a similar lawsuit. *See Kirk v. Schaeffler Grp. USA, Inc.*, No. 3:13-CV-5032, 2016 WL 928721 (W.D. Mo. Mar. 9, 2016). As the Court explained, "operating a ball bearing plant using TCE as a solvent is not an abnormally dangerous activity," and "[the plaintiff's] claim [wa]s not directed at an activity, but rather goes to the manner in which FAG Bearings engaged in the activity of operating a ball bearing plant using TCE." *Id.* at *2. *See also*, *Greene v. Prod. Mfg. Corp.*, 842 F. Supp. 1321, 1327 (D. Kan. 1993) (TCE "poses virtually no threat to [the] environment" when properly used); *O'Connor v. Boeing N. Am., Inc.*, No. CV 97-1554, 2005 WL 6035255, at *18 (C.D. Cal. Aug. 18, 2005) (dismissing strict liability claim based on TCE); *Modern Holdings, LLC v. Corning, Inc.*, No. 13-405, 2015 WL 1481457, at *10 (E.D. Ky. Mar. 31, 2015) (same).

Because this Court has previously found that operating a ball bearings manufacturing facility and using an organic solvent like TCE as a degreaser is not an abnormally dangerous activity, Plaintiffs' strict liability claim (Count I) is dismissed.

### B. Claims against Schaeffler

It is undisputed that FAG Bearings' alleged release of TCE and alleged failure to disclose that release occurred in the 1970s to mid-1990s. Plaintiff Knapp's alleged exposure to TCE ended

in September 1995, but Schaeffler did not purchase FAG Bearings until 2005. Therefore, Schaeffler's only potential connection to this action came when Schaeffler bought FAG Bearings and made it a subsidiary. Generally, that parent-subsidiary relationship cannot create tort liability. Indeed, it is black letter law in Missouri that, "[i]n the eyes of the law, two different corporations are two different persons." *Grease Monkey Int'l, Inc. v. Godat*, 916 S.W.2d 257, 262 (Mo. Ct. App. 1995). This is "true even if one corporation is the sole shareholder of the other." *Id.* The two corporations must "be regarded as distinct legal entities." *Mid-Missouri Tel. Co. v. Alma Tel. Co.*, 18 S.W.3d 578, 582 (Mo. Ct. App. 2000). Plaintiffs assert that Schaeffler is liable for any liabilities of FAG Bearings. Plaintiffs argue two theories in support—veil piercing and successor liability.

### 1. Veil piercing

To allege that veil piercing might be proper, a plaintiff must plead three elements. First, that the corporate parent had "complete domination" over the subsidiary "at the time" of the conduct in question, such that the subsidiary had "no separate mind, will or existence of its own." *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 18 (Mo. 2013). Second, that the parent used this absolute control "to commit fraud or wrong," or "to perpetrate the violation of statutory or other positive legal duty." *Id.* at 19 (emphasis omitted). Third, that the parent's use of control to commit the unlawful act "cause[d] the injury or . . . loss complained of." *Id.* at 18.

Plaintiff's argument that Schaeffler can be liable for FAG Bearings' alleged conduct under a veil piercing theory is foreclosed as a matter of law. Missouri law allows a plaintiff to pierce the corporate veil only when a corporate parent had "complete domination, not only of finances, but of policy and business practice in respect to the [action] attacked so that the [subsidiary] . . . had *at the time* no separate mind, will or existence of its own." *Blanks v. Fluor Corp.*, 450 S.W.3d 308, 375 (Mo. Ct. App. 2014) (emphasis added). Unless the "parent corporation" had "complete[]"

4

control [of] its subsidiary *at the time* the complained of conduct occurred," a court cannot hold the parent liable for the alleged acts of the subsidiary. *Peters v. Lifeline Sys. Co.*, No. 4:08CV1862, 2009 WL 3335098, at *1 (E.D. Mo. Oct. 15, 2009) (emphasis added).

Plaintiffs do not allege that Schaeffler controlled FAG Bearings "at the time" of FAG Bearings' alleged wrongful conduct. Rather, Plaintiffs affirmatively plead that FAG Bearings engaged in the alleged misconduct from 1975 to mid-1990s. ¶¶ 22–38. They further allege that Plaintiff Knapp's exposure to the TCE ended in 1995. ¶ 44. But Schaeffler did not purchase FAG Bearings until 2005. ¶¶ 4, 6. This was decades after the time of any alleged conduct harmful to Knapp. *Blanks*, 450 S.W.3d at 375. Schaeffler accordingly could not have had "complete domination" over FAG Bearings "at the time" in question. *See Peters*, 2009 WL 3335098, at *1 ("Given the timing of [the corporate parent] becoming the parent of [the subsidiary] . . . it is not plausible that [the parent] exerted the type of control at the time the complained of conduct occurred needed to pierce the corporate veil").

### 2. *Successor liability*

Plaintiffs also argue that Schaeffler is liable as the successor in liability of FAG Bearings. "[T]he general rule of law in Missouri and most other jurisdictions is that where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the former." *Edwards v. Black Twig Mktg. & Commc'ns LLC*, 418 S.W.3d 512, 520 (Mo. Ct. App. 2013) (quoting *Roper Elec. Co. v. Quality Castings, Inc.,* 60 S.W.3d 708, 711 (Mo. Ct. App. 2001)) (emphasis added). In order to justify an exception to that general rule, a plaintiff must plead two different elements. First, the plaintiff must plead that the predecessor company transferred all or substantially all of its assets to the successor company. *Id.* at 521. Second, the plaintiff must plead one of four additional facts: (1) "the purchaser expressly or

impliedly agrees to assume the debts and liabilities" of the transferor; (2) "the transaction amounts to a consolidation or merger"; (3) "the purchaser is merely a continuation of the seller"; or (4) "the transaction is entered into fraudulently to escape liability for the debts and liabilities." *Id.* at 520. Plaintiffs apparently only argue that the merger and mere continuation exceptions apply.

As noted, a "transfer of all or substantially all of the assets of one corporation to another is a prerequisite to corporate successor liability under any of the four exceptions to the general rule of nonliability." *Id*. at 521. It is not evident from the Complaint that Plaintiffs have made a requisite showing that such a transfer took place between Schaeffler and FAG Bearings. On one hand, they simply state that Schaeffler purchased all of FAG Bearings' assets (Compl. ¶ 5), but then note that Scaheffler did not purchase FAG Bearings' land and buildings in Joplin, Missouri, which are the very subject of this action. In any event, neither the merger nor the mere continuation exceptions apply in this case.

As for the merger exception: "[i]n a true merger or consolidation, the acquired company ceases to exist." *Kirk v. Schaeffler Grp. USA, Inc.*, 887 F.3d 376, 389 (8th Cir. 2018) (citing *Dodier Realty & Inv. Co. v. St. Louis Nat'l Baseball Club*, 238 S.W.2d 321, 324–25 (Mo. 1951)); *see also Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.*, 892 A.2d 1073, 1077 (Del. 2006) (a "merged corporation ceases to exist"). Plaintiffs apparently acknowledge that FAG Bearings does in fact exist separate from Schaeffler. FAG Bearings is named as a separate defendant as a "Delaware company with a principal place of business in Jasper County, Missouri," and as noted Plaintiffs acknowledge that FAG Bearings owns property in Joplin. Plaintiffs have not pleaded that FAG Bearings, LLC, has no distinct corporate existence, and therefore Plaintiffs have not demonstrated that a merger exception applies in this case.

6

However, the mere continuation exception may apply here. The "continuation exception…focuses on situations in which the purchaser is merely a restructured or reorganized form of the seller." *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 468 (3d Cir. 2006). This exception applies where the new company acquires the assets of the old one, and the new company is essentially identical to the old company but "wears a 'new hat.'" 15 Fletcher Cyc. Corp. § 7124.10. To show that the successor company is nothing more than the predecessor redressed, a plaintiff must plead, for example, that the "officers, directors, and stockholders" of the predecessor hold the same role at the successor, that the two companies engage in "identical" "business operations," and that the "incorporators" of the predecessor "also incorporated" the successor. *See Altidor v. Broadfield*, 576 S.W.3d 272, 281 (Mo. Ct. App. 2019).

Plaintiffs acknowledge that Schaeffler existed before it purchased FAG Bearings. ¶¶ 4–6. This suggests that a mere continuation exception could be inapplicable. *See Young v. Fulton Iron Works Co.*, 709 S.W.2d 927, 941 (Mo. Ct. App. 1986) (finding it "noteworthy" that purchaser "was not created to acquire" product lines of other company but had "been in other lines of business for some 116 years before the . . . transaction"); *Wallace v. Dorsey Trailers Se., Inc.*, 849 F.2d 341, 343 (8th Cir. 1988) ("'mere continuation' exception did not apply because [among other reasons] [parent] was not created for the purpose of acquiring [subsidiary's] product line"). Plaintiffs also plead that Schaeffler "owns all the stock of FAG Bearings." ¶ 10. Owning the stock of a subsidiary does not make the parent a mere continuation of the subsidiary. Instead, it highlights that the parent and subsidiary are different entities. *See Altidor*, 576 S.W.3d at 281.

Plaintiffs' assertions—often self-contradicted—cannot justify the application of a mere continuation exception without any other facts supporting the notion. While Plaintiffs point to their statements that FAG Bearings "has no distinct corporate existence" (¶ 6) and that Schaeffler "took

on, purchased or otherwise assumed all assets, properties, and liabilities of FAG Bearings LLC…" there is nothing in the Complaint that would suggest that Schaeffler is merely FAG Bearings in a "new hat". Instead, these pleadings seem to go to a merger exception argument, which the Court rejected above.

In conclusion, the Court finds that Plaintiffs have not demonstrated that Schaeffler can be held liable for FAG Bearings' alleged conduct in this case under any exception to the general rule that the parent and subsidiary corporation are to be regarded as distinct legal entities. Accordingly, the Court **GRANTS** Defendants' motion to dismiss all claims against Schaeffler.

## CONLCUSION

For the reasons set forth in this order, Defendants' Partial Motion to Dismiss (Doc. 24) is **GRANTED** in its entirety. Count I of Plaintiffs' Complaint is dismissed. All claims against named defendant Schaeffler Group USA, Inc. are dismissed.

**IT IS SO ORDERED.**

Dated: June 17, 2021                                   _/s/ Douglas Harpool_____
                                                                **DOUGLAS HARPOOL**
                                                                **United States District Judge**

8