IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| SPENCER KNAPP and ELIZABETH YGARTUA, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. 3:21-cv-05035-MDH |
| FAG BEARINGS, LLC, | ) ) ) |
| Defendants. | ) ) |

# ORDER

Before the Court is Defendant FAG Bearings LLC's ("FAG Bearings" or "Defendant") motion for summary judgment. (Doc. 54). For the reasons set forth herein, the motion is **GRANTED**, and summary judgment is entered in favor of Defendant FAG Bearings.

## BACKGROUND

Plaintiffs Spencer Knapp ("Plaintiff") and Elizabeth Ygartua, who are husband and wife, filed their Complaint on February 5, 2021. ¶¶ 1, 79. Plaintiffs allege that FAG Bearings, LLC ("FAG Bearings") used trichloroethylene ("TCE") at its ball bearing manufacturing facility in Joplin, Missouri from 1975 to 1981, ¶¶ 22–23, and that FAG Bearings released TCE in or around its facility during that time, ¶ 26. Plaintiffs further allege that Knapp was exposed to TCE released by FAG Bearings from his conception in 1985 until September 1995, ¶¶ 28, 44, and that he developed multiple sclerosis ("MS") as a result, ¶ 46. Plaintiffs claim Strict Liability (Count I), Negligence (Counts II and III), Punitive Damages (Count IV), and Loss of Consortium (Count V). ¶¶ 49–80.

At the time Knapp brought this action, he had known for over two decades that he may have been exposed to TCE used or released by FAG Bearings. Ex. A, Knapp Dep. 17:9–12; 17:16–

1

18:6; 61:15–62:18. Knapp's parents were parties to an earlier case brought against FAG Bearings related to TCE contamination. Ex. A, Knapp Dep. 17:21–18:3.

Knapp has lived in Texas since January 2013. Ex. A, Knapp Dep. 26:23–27:2. Knapp was diagnosed with MS on May 10, 2017. Ex. D, Spencer Knapp-PPR-000062–65, marked as Dep. Ex. 7; Ex. A, Knapp Dep. 98:5–22. Knapp was in Dallas, Texas when he received his MS diagnosis. Ex. D, Spencer Knapp-PPR-000062–65, marked as Dep. Ex. 7; Ex. A, Knapp Dep. 94:3–10.

Knapp experienced symptoms underlying his MS diagnosis in an approximately two-week period preceding that diagnosis. On April 23, 2017, Knapp experienced left-side numbness. Ex. E, Spencer Knapp-PPR-000188, marked as Dep. Ex. 3; Ex. A, Knapp Dep. 85:19–23. Knapp was in Texas at that time. Ex. A, Knapp Dep. 86:11–89:24. On April 28, 2017, Knapp and Ygartua had a failed sexually intimate experience purportedly resulting in part from Knapp's MS symptoms. Ex. C, Pl. Elizabeth Ygartua's Resp. to Def.'s Interrog. No. 14; Ex. A, Knapp Dep. 81:4–7; 81:19–82:6. Knapp was in Texas at that time. Ex. A, Knapp Dep. 80:6–81:3. On April 29, 2017, Knapp experienced spreading numbness in his left arm and left leg. Ex. F, Spencer Knapp-PPR-000426–30; Ex. A, Knapp Dep. 91:15–19; 92:11–20. Knapp was in Texas at that time. Ex. A, Knapp Dep. 82:13–83:2.

These symptoms led Knapp to visit the Baylor University Medical Center emergency room on April 29, 2017. Ex. G, Spencer Knapp-PPR-000421–25, marked as Dep. Ex. 5; Ex. A, Knapp Dep. 91:15–19; 92:11–20. That visit was in Dallas, Texas. Ex. G, Spencer Knapp-PPR-000421–25, marked as Dep. Ex. 5; Ex. A, Knapp Dep. 91:15–19. In addition to his April 29, 2017 emergency room visit, Knapp visited a doctor on April 26, 2017. Ex. E, Spencer Knapp-PPR-000188–92, marked as Dep. Ex. 3; Ex. A, Knapp Dep. 87:1–4. That visit was in Dallas, Texas. Ex.

2

E, Spencer Knapp-PPR-000188–192, marked as Dep. Ex. 3; Ex. A, Knapp Dep. 87:1–89:20; Ex. H, Spencer Knapp-PPR-000066–68, marked as Dep. Ex. 6. Knapp also visited a doctor on May 2, 2017. Ex. H, Spencer Knapp-PPR-000066–68, marked as Dep. Ex. 6; Ex. I, Spencer Knapp-PPR-000217–18; Ex. A, Knapp Dep. 93:13–95:1. That visit was in Dallas, Texas. Ex. I, Spencer Knapp-PPR-000217–18; Ex. A, Knapp Dep. 94:3–10.

Before the onset of the above-described symptoms in late April 2017, Knapp occasionally experienced sporadic, short-term sensory events. For example, Knapp had blurriness in one eye in 2014. Ex. D, Spencer Knapp-PPR-000062, marked as Dep. Ex. 7; Ex. A, Knapp Dep. 66:13–69:13. Knapp was in Dallas, Texas when he experienced that blurriness. Ex. B, Pl. Spencer Knapp's Resp. to Def.'s Interrog. No. 7; Ex. A, Knapp Dep. 66:13–68:22. And in the year preceding his MS diagnosis, Knapp experienced intermittent numbness in one or more of his extremities. Ex. H, Spencer Knapp-PPR-000066, marked as Dep. Ex. 6; Ex. A, Knapp Dep. 70:14–71:18; 96:8–97:1. Knapp cannot recall significant details concerning these events. Ex. A, Knapp Dep. 70:14–71:18; 96:8–16. But Knapp was in Texas when they occurred. Ex. A, Knapp Dep. 70:22–71:18; 96:18–20. Knapp cannot recall such an event occurring anywhere other than in Texas. Ex. A, Knapp Dep. 70:22–71:18.

On April 28 2017, Ygartua suffered an asserted injury purportedly stemming from Knapp's own asserted injury, when Knapp and Ygartua had a failed sexually intimate experience purportedly resulting in part from Knapp's MS symptoms. Ex. C, Pl. Elizabeth Ygartua's Resp. to Def.'s Interrog. No. 14; Ex. A, Knapp Dep. 81:4–7; 81:19–82:6. Ygartua was in Dallas, Texas at that time. Ex. C, Pl. Elizabeth Ygartua's Resp. to Def.'s Interrog. No. 14; Ex. A, Knapp Dep. 80:6–81:3.

In December 2017, Knapp's brother sent him an email concerning a personal injury suit brought by another plaintiff, Jodelle Kirk, against FAG Bearings in connection with FAG Bearings' historical use or release of TCE. Ex. A, Knapp Dep. 15:10–17:15; 102:19–24. That email "about the [Kirk] case" caused Knapp to contact and then retain a lawyer. Ex. A, Knapp Dep. 15:12–16:16; 20:17–21:24. Knapp was "one of . . . two places, home or work," and thus in Texas, when he received the email from his brother. Ex. A, Knapp Dep. 122:8–15. On August 16, 2018, Knapp's brother sent Knapp an email titled "I think you should sue FAG Bearings." Ex. J, Email from Bradley Knapp to Spencer Knapp (Aug. 16, 2018).1 That email contained links to articles suggesting a purported connection between TCE exposure and autoimmune diseases. Ex. J, Email from Bradley Knapp to Spencer Knapp (Aug. 16, 2018). Knapp was in Texas when he received that email. *See* Ex. A, Knapp Dep. 122:8–15; *see also* n.4, *infra*.

Knapp himself identified a purported causal link when he "research[ed]" articles and "found other articles that had described a correlation between TCE exposure and autoimmune disease development later in life." *Id.* 155:13–16. He thus thought the connection "seemed logical." *Id.* 155:16–19. Knapp retained his attorneys in late 2017 or early 2018. Mot. Ex. A. 123:10–19; 21:1–23:8. Knapp and his counsel retained a putative expert to opine on causation of Knapp's injuries. This report was conducted by medical doctor Dr. Norbert Belz, described by Plaintiff as "an evaluator", and concluded that Knapp's MS was contributed to be caused by his TCE exposure. This report was completed on November 19, 2019.

**STANDARD**

"Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Watts v. State of Missouri Dep't of Corr.*, No. 2:18-CV-04076-

4

MDH, 2021 WL 4071870, at *3 (W.D. Mo. Sept. 7, 2021) (citing Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993)). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Id.* (quoting *Quinn v. St. Louis Cnty.*, 653 F.3d 745, 750 (8th Cir. 2011)). "Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant meets the initial step, the burden shifts to the nonmoving party to "'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "To satisfy this burden, the nonmoving party must 'do more than simply show there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## DISCUSSION

Neither party argues the substance of Plaintiffs' claims. Instead, the pending motion rests entirely on whether Plaintiffs'' Complaint is time-barred by the applicable statute of limitations.

1. **Texas statute of limitations apply to Knapp's claims**

Missouri procedural law bars any claim that would be time-barred in the jurisdiction where it originated. The Court must only determine where the claim originated—meaning where the plaintiff physically was when his claim became objectively capable of ascertainment. Missouri procedural law applies. When "sitting in diversity and assessing statutes of limitations, federal courts apply the law of the forum state." *Burdess v. Cottrell, Inc.*, 533 F. Supp. 3d 717, 719 (E.D. Mo. 2021) (citing *Nettles v. Am. Tel. and Tel. Co.*, 55 F.3d 1358, 1362 (8th Cir. 1995)). In this forum state—Missouri—"statutes of limitations are procedural and accordingly governed by

Missouri law." *Id.* (citing *Nettles*, 55 F.3d at 1362); *Harris v. Mortg. Pros., Inc.*, 781 F.3d 946, 948 (8th Cir. 2015) ("In Missouri, statutes of limitation are procedural.").

Missouri procedural law bars claims that would be time-barred in the jurisdiction where they originated, even if they would be timely under Missouri's own statute of limitations. Specifically, Missouri's borrowing statute provides that "[w]henever a cause of action has been fully barred by the laws of the state, territory or country in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this state." Mo. Rev. Stat. § 516.190. Under Missouri law, therefore, while personal injury actions that "originated" in Missouri are subject to a five-year period, personal injury actions that "originated" in another State with a shorter limitations period for such actions in that State must comply with that shorter period.

Application of the borrowing statute does not require the Court to resolve "traditional conflicts of law" questions. *Thompson by Thompson v. Crawford*, 833 S.W.2d 868, 872 (Mo. banc 1992). Instead, the "General Assembly of Missouri answered [those] question[s]" through the borrowing statute. *Id.* at 870. The statute "provide[s] a choice-of-law rule to determine the applicable statute of limitation for a cause of action based upon where it 'originates.'" *Natalini v. Little*, 185 S.W.3d 239, 243 (Mo. Ct. App. 2006).

To determine where the plaintiff's claims "originated," Mo. Rev. Stat. § 516.190, the Court only must determine where they "accrued." *See Crawford*, 833 S.W.2d at 871 (noting that the Missouri Supreme Court has construed "'[o]riginated' . . . to mean 'accrued'"); *Natalini*, 185 S.W.3d at 243 ("For the purpose of determining where a cause of action 'originates'" under the borrowing statute, therefore, "courts look to when a cause of action 'accrues[.]'"). Indeed, Missouri courts consistently "have equated 'originated' with 'accrued.'" *Id.* (citing cases); *see also Thomas v. Grant Thornton LLP*, 478 S.W.3d 440, 444 (Mo. Ct. App. 2015) (citing cases).

Finally, Missouri law is clear on when a cause of action "accrues": when the resulting damage "is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100; *see Elmore v. Owens–Illinois, Inc.*, 673 S.W.2d 434, 436 (Mo. banc 1984) (a "cause of action accrues when and originates where damages are sustained and are capable of ascertainment"). The Missouri Supreme Court has further clarified that standard by explaining that a claim accrues "when the evidence was such to place a reasonably prudent person on notice of a *potentially* actionable injury." *Powel v. Chaminade Coll. Preparatory, Inc.*, 197 S.W.3d 576, 582 (Mo. banc 2006), *as modified on denial of reh'g* (Aug. 22, 2006) (emphasis in original).

As a result, a claim originates in the State *where* the plaintiff is present *when* he is put on notice that he has a potentially actionable injury. *See Natalini,* 185 S.W.3d at 246 ("[D]amages from [the defendant's] wrongs . . . were sustained and became capable of ascertainment in the state of Kansas, and, therefore, originated in Kansas"); *Elmore*, 673 S.W.2d at 436 ("cause of action accrues when and originates where damages are sustained and are capable of ascertainment"); *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 620 (Mo. Ct. App. 2006) (per curiam) ("Section 516.100 not only determines *when* a cause of action accrues but also *where* it accrues for the purpose of determining whether the borrowing statute applies."); *Nettles*, 55 F.3d at 1362 ("critical issue . . . in applying section 516.190 . . . where a cause of action originated").

An "objective standard" governs when an injury accrues and thus where it originates. *Burdess*, 533 F. Supp. 3d at 723. That means both questions "can be decided by the court as a matter of law." *Id.* (citing cases); *Thomas*, 478 S.W.3d at 444 (questions "ordinarily decided as a matter of law") (quoting *Ferrellgas*, 190 S.W.3d at 620). A straightforward application of the legal framework to the undisputed facts shows that Knapp's negligence claim became capable of ascertainment in Texas.

7

Missouri courts have explained that, where the claimed injury is a physical ailment, it is "'sustained and [is] capable of ascertainment,' at the latest, when it is diagnosed." *Lockett v. Owens-Corning Fiberglas*, 808 S.W.2d 902, 907 (Mo. Ct. App. 1991) (citation omitted) (quoting Mo. Rev. Stat. § 516.100). Knapp's Complaint takes the position that his claim accrued when he was diagnosed on May 10, 2017. Compl. at 20. *See Knudsen v. United States*, 254 F.3d 747, 752 (8th Cir. 2001) ("factual statements in a party's pleadings are generally binding"). In any event, any possible point of ascertainment of Knapp's injuries occurred in Texas, as detailed in the factual background. The fact that the alleged source of Knapp's injury is in Missouri is legally insufficient to invoke Missouri's statute of limitations. Accordingly, pursuant to Missouri's borrowing statute, Plaintiffs' claims are subject to the applicable Texas statute of limitations.

2. **Plaintiffs' Complaint is barred by the statute of limitations**

Because Knapp's claims originated in Texas, Missouri law directs the Court to borrow the applicable Texas statute of limitations. Mo. Rev. Stat. § 516.190. In Texas, the limitations period for a personal injury claim—including one based in negligence—is only two years, as established by Tex. Civ. Prac. & Rem. Code § 16.003. *See Berry v. ADT Seurity Serv.*, 393 F. Supp. 3d 548, 556 (S.D. Tex. 2019) ("Under Texas law, personal injury cases involving negligence . . . are governed by a two-year statute of limitations.") (citing Tex. Civ. Prac. & Rem. Code § 16.003(a)). The facts, as set forth by Plaintiffs in their Complaint, show that the claim accrued more than two years before the Complaint was filed on February 5, 2021.

Defendant asserts that the claim accrued—at the latest—on May 10, 2017, when Knapp was diagnosed with MS. Plaintiffs, on the other hand, argue that the claim did not accrue until Dr. Belz' report linking Knapp's diagnosis with TCE exposure was completed on November 19, 2019. In making that argument, Plaintiffs contend that a claim does not accrue until a plaintiff and their

counsel—despite knowing about plaintiff's TCE exposure, his diagnosis, and about cases and studies that he claims connect to two—hire a putative expert to opine on causation. This is contrary to law.

In Texas, the default accrual rule is the "legal injury rule," under which a claim "accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered." *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015). Texas also has a "discovery rule." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001). This "very limited exception" can "defer accrual of a cause of action until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise to the claim." *Id.* Accordingly, the discovery rule does not forestall accrual forever. Indeed, a plaintiff in federal court bears the burden not only of invoking the rule, but also of showing his claim is not time-barred. *Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 576 (W.D. Tex. 2019); *FDIC v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993). By Plaintiffs' own pleadings and admissions, it is clear that by mid-2018, at the latest, he knew the facts giving rise to his claim.

The undisputed material facts demonstrate that Knapp has known about his alleged TCE exposure since his childhood—his parents even sued FAG Bearings. Mot. 8 n.3 & Ex. A 17:21–25 ("I remember the class action lawsuit, of the residents of Silver Creek having this class action lawsuit against FAG Bearings to rerun the water system to link up with the city water system because of the contamination."). In 2014, Knapp experienced blurriness, perhaps an early MS symptom, and, in April 2017, he experienced numbness, further signs of MS. Mot. SOF ¶¶ 7 & 9. In May 2017, Knapp was diagnosed with MS. *Id.* ¶ 6. In December 2017, Knapp's brother emailed him "about a case of someone who had developed an autoimmune disease as a result of growing

9

up in" Joplin. Mot. Ex. A. 15:12–16. It "jumped out" to Knapp that the plaintiff "had developed an autoimmune disease … potentially as a result of exposure to TCE." *Id.* 64:23–65:2.

Knapp hired attorneys in the "winter of 2017." *Id.* 123:10–19; 13:22–14:3; 21:1–23:8. When Knapp had not sued by August 2018, his brother urged him to "sue FAG Bearings" and sent an email with articles describing a purported connection between TCE and autoimmune illness. Mot. SOF ¶ 11. Knapp also did his own "research" and "found other articles that had described a correlation between TCE exposure and autoimmune disease." Mot. Ex. A. 155:11–16. Knapp then concluded "it seemed logical" that TCE may have caused his MS. *Id.* 155:16–19.

After hiring attorneys, Knapp had "[n]o" "concerns" about filing "immediately." *Id*. 19:21–24; 123:10–13. But he waited to file and deferred to his lawyers. *Id.* 129:8–9 ("The decision to bring the lawsuit forward was fully on the decision of the -- of my attorneys."). And when Knapp finally filed, he alleged that his claim accrued when he was diagnosed with MS in May 2017. Compl. ¶ 20. When asked why he believes his MS may have been caused by TCE, Knapp did not point to Dr. Belz's report, but rather the "article that [his] brother sent [him]" and "other articles" he "found" "[a]fter reading that initial article." *Id*. 155:10-19. During his deposition, Knapp never disclosed or referenced any communications with Dr. Belz as playing any role in his decision-making. It follows that there are no "facts giving rise to" Knapp's claim that he did not "know" by some point near August of 2018 at the latest. Accordingly, the Texas statute of limitations would have expired around August of 2020 at the latest, but the Complaint was not filed until February of 2021.

If the Court were to adopt Plaintiffs' argument that the claim did not accrue until Dr. Belz's hired report, Plaintiffs could assert that the claim would not have accrued until, for example, 2022 if the report had simply been retained and completed at that time. Numerous cases have rejected

the assertion that a purportedly definitive link between exposure and condition is necessary for accrual. For instance, in *Pirtle v. Kahn*, the plaintiff argued her claim did not accrue until she obtained "environmental mold tests and was diagnosed with mold-related illnesses." 177 S.W.3d 567, 572 (Tex. App. 2005). The court disagreed and held "as a matter of law" that the plaintiff had "knowledge of facts that would cause a reasonably prudent person to make an inquiry" when she "found the leak in her apartment, saw … mold, and immediately drew the inference that the mold caused her illnesses." *Id.* at 573. Because she "waited more than three years to confirm the causal connection … and to bring suit," her claim was time-barred. *Id.* at 573–74.

In *Bell v. Showa Denko K.K.,* 899 S.W.2d 749 (Tex. App. 1995), the Texas court similarly held that a claim accrued when the plaintiff "knew of her injury and associated it with" ingestion of a tainted product. 899 S.W.2d at 755. The court rejected that the claim did not accrue until the plaintiff "received a definite diagnosis," even though she was investigating "other possibilities as to the cause of her condition." *Id.* Instead, her claim accrued when "she read" about issues with the product and learned others had "symptoms" that "corresponded to" her own, and certainly by the time she asked doctors about a connection and took action by "fill[ing] out" a form suggesting a link between the product and her condition. *Id.*

In *O'Nan v. Velsicol Chem. Corp.*, the Texas court held that the plaintiff's claim accrued when she "associated the illnesses to a particular cause" even though "other causes were being investigated." 1998 WL 774131, at *4 (Tex. App. 1998). The plaintiff knew her family had been exposed to chemicals and was "aware of changes" in her family's health. *Id.* at *3. Although she "*feared*" that the exposure had caused the changes, she did not know the "*exact* cause." *Id.* at *1, *3 (emphases in original). And the "first confirmation of a connection" came only after blood sampling. *Id.* at *1. The court rejected the argument that the claim did not accrue until that

11

"confirmation," and held "as a matter of law" that it accrued after she "read an article" about chemical exposure and was put "on notice to diligently investigate the link." *Id.* at \*3.

As in *Pirtle*, Knapp inferred a connection between TCE exposure and MS, describing it as "logical." Mot. Ex. A 155:16–19. As in *Bell*, Knapp asked doctors about a connection, but also hired counsel. *Id.* 76:1–4 (Knapp "asked Dr. Greenfield"); *id.* 21:1–23:8; 123:10–19 (Knapp hired attorneys). As in *O'Nan*, Knapp knew about his exposure and read "articles that had described a correlation between TCE exposure and autoimmune disease." *Id.* 155:11–19. All to say: Knapp's claim accrued when he read an "article; connected h[is] symptoms … and contacted the lawyer's office." *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1141 (5th Cir. 1997). He "had two years from" then to "discover[] … evidence" (including putative expert evidence) and to "file suit"; but "[]he failed to do so." *Id.*

In *Rodriguez v. Crowell*, the plaintiff argued that her claim did not accrue until a "physician … connected her medical condition to her workplace environment." 319 S.W.3d 751, 757–58 (Tex. App. 2009). The court disagreed and held that her claim accrued "more than two years" earlier when the plaintiff felt ill, saw a doctor, knew others with similar illnesses, knew that others had filed claims, and suspected the cause of her illness. *See id.* And in *Jones v. Anderson*, the court likewise rejected the argument that a claim did not accrue until a "physician gave [her] a connection" on what "'might' be causing" her illness. 2016 WL 4543551, at \*4 (E.D. Tex. 2016). Instead, her claim accrued when her "symptoms manifested themselves to a degree or for a duration that" should have put her on notice that there may have been a "causal connection" between her illness and her exposure. *Id.* at \*6–7.

Texas courts follow the rule that "accrual … is not dependent on a confirmed medical diagnosis," *Childs v. Haussecker*, 974 S.W.2d 31, 42 (Tex. 1998), but occurs when a plaintiff

12

"knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury." *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018). "[T]olling … ends when the person … acquires knowledge of facts … which would cause a reasonable person to make an inquiry." *Bell*, 899 S.W.2d at 754. Under that rule, Knapp's claim accrued in mid-2018, at the latest, and is time-barred.

### a. Ygartua's claim against Defendant also fails.

The Court need not decide whether Missouri or Texas substantive law governs Ygartua's loss-of-consortium claim. Missouri courts have held that a loss-of-consortium claim is subject to any time-bar of the spouse's underlying claim. *See, e.g., Burdess*, 533 F. Supp. 3d at 720 n.3 (noting that wife's "loss of consortium claim, meanwhile, is entirely derivative of [husband's] claims and accordingly fails because [the husband's] claims are time-barred"); *Ridder v. Hibsch*, 94 S.W.3d 470, 473 (Mo. Ct. App. 2003) (similar); *H.R.B. v. Rigali*, 18 S.W.3d 440, 445–46 (Mo. Ct. App. 2000) (similar); *but see Maddox v. Truman Med. Ctr., Inc.*, 727 S.W.2d 152, 154 (Mo. Ct. App. 1987) (stating contrary rule).

Texas courts have reached the same conclusion. *See, e.g., Maes v. El Paso Orthopaedic Surgery Grp., P.A.*, 385 S.W.3d 694, 698 (Tex. App. 2012) ("Under Texas law, claims for loss of . . . consortium are extinguished by the running of the statute of limitations on the injured [party's] underlying claim."); *Reagan v. Vaughn*, 804 S.W.2d 463, 468 (Tex. 1990), *clarified on reh'g*, 804 S.W.2d at 467 (Tex. 1991) (similar); *but see Browning–Ferris Indus., Inc. v. Lieck*, 845 S.W.2d 926, 949 (Tex. App. 1992), *rev'd on other grounds*, 881 S.W.2d 288 (Tex. 1994) (arguably suggesting contrary rule). Whether Missouri law or Texas law applies, therefore, Ygartua's claim necessarily fails under significant authority in either State.

### CONLCUSION

Based on the foregoing, the Court finds that Plaintiffs' Complaint is time-barred by the applicable statute of limitations. Therefore, Defendant FAG Bearings' motion for summary judgment (Doc. 54) is **GRANTED**, and summary judgment in entered in favor of FAG Bearings, LLC.

**IT IS SO ORDERED.**

Dated: February 23, 2022                                     */s/ Douglas Harpool*
                                                            **DOUGLAS HARPOOL**
                                                            **United States District Judge**